## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RONNIE R. MORAN** | **CIVIL ACTION** |
| **VERSUS** | **NO.  13-4579** |
| **N. BURL CAIN, WARDEN LOUISIANA STATE PENITENTIARY** | **SECTION  "J"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

### I.    Factual Background

The petitioner, Ronnie R. Moran ("Moran"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On October 29, 1998, Moran was charged by Bill of Information in Orleans Parish with one count of aggravated rape of W.C.[3] He entered a plea of not guilty to the charge on December 4, 1998.[4]

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 3.

[3]St. Rec. Vol. 2 of 4, Bill of Information, 10/29/98.  The victim is referred to in the state court records as W.C. Under Louisiana law, the victim of a sex offense and her family are identified by initials to protect her identity. La. Rev. Stat. Ann § 46:1844(W)(3).

[4]St. Rec. Vol. 2 of 4, Minute Entry, 12/4/98.

The record reflects that, in October of 1996, T.C. took her seven-year-old daughter W.C. to Ochsner Hospital's emergency room when W.C. complained of a sore throat and arm pain.[5]  She was diagnosed with a sore throat and sent home.  About two days later, on October 14, 1996, T.C. took W.C. to Children's Hospital with high fever and complaints of a stiff arm.

Dr. Scott Benton, the director of pediatric forensic medicine at Children's Hospital, examined W.C.  She initially complained of a sore throat which then progressed to arthritis or inflammation of the shoulder joint.  Her shoulder was very inflamed and, at the time, she was being treated by a rheumatologist.  The initial diagnosis that day was rheumatoid arthritis.

An orthopedist was called to examine W.C. and a surgical procedure was done to remove the fluid from her shoulder joint.  Testing of the fluid revealed that the child had gonorrhea.  Once the gonorrhea was diagnosed, the child admitted that "Ronnie" had abused her.  Ronnie Moran was the boyfriend of W.C.'s cousin C.S., who with Moran had lived with the family for a short while.

Dr. Benton performed a physical examination of W.C., including a gynecological examination.  The examination revealed that she had suffered trauma to the vaginal area.  Dr. Benton found the physical results of the examination corroborated her statements concerning sexual abuse by "Ronnie."

Based on his findings, the police were called.  Sergeant Perla Gibbs interviewed Dr. Benton, a treating physician, and W.C.  Sergeant Gibbs learned that the hospital tests revealed that the child had gonorrhea.  W.C. disclosed that Moran sexually molested her on several occasions between August of 1995 and September of 1996.  She was six years old when she first met Moran.

---

[5]The facts were taken from the opinion of the Louisiana Fourth Circuit Court of Appeal on direct appeal.  *State v. Moran*, 801 So.2d 1174, 1174-75 (La. App. 4th Cir. 2001); St. Rec. Vol. 2 of 4, 4th Cir. Opinion, 2001-KA-0281, pp. 1-5, 11/14/01.

The first instance of abuse occurred at her grandmother's house while Moran and C.S. lived with them. W.C. awakened in the middle of the night and went into the kitchen. She was making a sandwich when Moran walked into the kitchen and sexually molested her. He told her that if she said anything, he would take her into the woods and kill her.

Over the next year, other incidents of rape and molestation occurred in the shed behind W.C.'s grandmother's house, at her aunt's house, in Moran's van, and at W.C.'s house. W.C. did not tell her mother or grandmother because Moran had threatened to kill her. She did not tell anyone until she was in Children's Hospital.

After determining that a crime had been committed, Sergeant Gibbs had a warrant issued for Moran's arrest. Further investigation into the incident revealed that, on September 4, 1996, C.S., who was W.C.'s cousin and Moran's girlfriend, presented herself to the emergency room at Methodist Hospital. She was seen there by Dr. Lloyd Gueringer, Jr. for complaints of abdominal pain. After examining C.S., Dr. Gueringer concluded that she had acute abdominal pain secondary to pelvic inflammatory disease. The likely cause of the "p.i.d." was either chlamydia or gonorrhea. Tests were not conducted at that time to determine which disease was the actual cause. The doctor instead prescribed antibiotic treatment for C.S.

Dr. Richard DiCarlo, an expert in internal medicine and infectious disease, examined W.C.'s medical records. He determined that W.C. had a disseminated gonococcal infection, which is rare. While gonorrhea is initially acquired through sexual contact, the bacteria can migrate to the blood and joints as it did with W.C. Dr. DiCarlo also examined C.S.'s medical records from Methodist Hospital emergency room, because there was a good chance that C.S. had gonorrhea as the cause for her p.i.d. in September of 1996.

Dr. DiCarlo reviewed Moran's medical records from Tulane Medical Center which showed that he was treated for urethritis in June of 1995. Urethritis is caused by gonorrhea or chlamydia. Moran's sick call records from jail dated between November 8 and 21, 1996, indicated that he was diagnosed with either urethritis or prostatitis, both of which are caused by sexually transmitted diseases.

Moran was tried before a jury on October 10 and 11, 2000 and was found guilty as charged.[6] At a hearing held on October 26, 2000, the Trial Court denied Moran's motion for a new trial and, after waiver of legal delays, sentenced Moran to serve life in prison at hard labor and without benefit of parole, probation, or suspension of sentence.[7]

On direct appeal, Moran's appointed counsel asserted that the Trial Court violated the prohibition against double jeopardy when it proceeded with trial to verdict after having *sua sponte* declared a mistrial, discharged the jury, and then reversed its own ruling.[8] The Louisiana Fourth Circuit affirmed the conviction and sentence on November 14, 2001, finding that the defense did not challenge the Trial Court's ruling at the time and therefore did not preserve the issue for appeal as required under La. Code Crim. P. art. 841.[9]

---

[6]St. Rec. Vol. 2 of 4, Trial Minutes, 10/10/00; Trial Minutes, 10/11/00; Jury Verdict, 10/11/00; Trial Transcript, 10/10/00; Trial Transcript, 10/11/00. Moran was originally tried before a jury on October 5 and 6, 1999, and that trial ended when the jury could not reach a verdict. St. Rec. Vol. 2 of 4, Trial Minutes, 10/5/99; Trial Minutes, 10/6/99.

[7]St. Rec. Vol. 2 of 4, Sentencing Minutes, 10/26/00; Sentencing Transcript, 10/26/00; Motion for New Trial (undated).

[8]St. Rec. Vol. 2 of 4, Appeal Brief, 2001-KA-0281, 3/5/01.

[9]*State v. Moran*, 801 So.2d 1174 (La. App. 4th Cir. 2001); St. Rec. Vol. 2 of 4, 4th Cir. Opinion, 2001-KA-0281, 11/14/01.

Moran's conviction became final thirty (30) days later, on December 14, 2001,[10] because he did not move for rehearing or timely seek review in the Louisiana Supreme Court. *Butler v. Cain*, 533 F.3d 314 (5th Cir. 2008) (appeal is final when the state defendant does not timely proceed to the next available step in an appeal process) (citing *Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003)).

According to the pleadings, and as conceded by the State, on May 19, 2004, Moran submitted an application for post-conviction relief to the state trial court raising several grounds for relief:[11] (1) the trial judge's disparaging remarks and intemperate criticism of defense counsel denied him a fair trial; (2) the trial judge denied him due process and a fair trial when he continued the trial after granting a mistrial without swearing the jurors or determining whether they could still be fair and impartial; and (3) his indictment was issued under a discriminatory grand jury selection process.

On March 15, 2006, having not heard from the Trial Court, Moran submitted a duplicate copy of his 2004 application for post-conviction relief.[12]  He also submitted a supplement to his application raising claims of ineffective assistance of counsel.  The record does not reflect what if any action was taken by the Trial Court.

Sometime later, Moran inquired by letter to the Trial Court about the status of his application and supplemental application.[13]  The record does not contain a response.

---

[10]The State's calculation of this date as December 13, 2001 is clearly incorrect by mere inspection of any calendar or application of basic math.

[11]The record provided by the State inexplicably fails to contain the pleadings apparently filed by Moran between 2004 and 2010.  Nevertheless, the State concedes the filings and respective dates as does Moran in his reply.  *See* St. Rec. Vol. 1 of 4, Uniform Application for Post-Conviction Relief, dated 5/19/04; Letter to the Court, dated 3/15/06; Certified Mail Card, 5/28/04; Certified Mail Receipt (Jordan), 5/21/04; Certified Mail Card, 5/25/04; Certified Mail Return (Judge), 5/24/04; Certified Mail Receipt, 5/21/04; Inmate Mail Request (U.S. Post Office), 5/20/04.

[12]St. Rec. Vol. 1 of 4, Letter to the Court, dated 3/15/06; Inmate Mail Request (Judge), 3/15/06; Inmate Mail Request (general fund), 3/15/06.

[13]St. Rec. Vol. 1 of 4, Letter to the Trial Court, undated.

On March 16, 2010, the Trial Court received in open court another application for post-conviction relief from Moran which was returned to him to provide a signature and related criminal case number.[14]   Moran's application, signed and dated March 24, 2010, raising the following grounds for relief:[15] (1) his right to a fair trial was violated where (a) he was denied effective assistance of counsel, (b) the state trial court used a derogatory tone with defense counsel creating a running feud resulting in the Trial Court declaring a mistrial because of counsel's behavior, although the Court reversed itself, and (c) the juror's were not questioned as to whether they could render a fair and impartial verdict after the mistrial was reversed; (2) he was not advised at sentencing of the delays for filing for post-conviction relief; (3) the district court abused its discretion in granting a mistrial and withdrawing the order, not swearing in the jury after they were recalled, and not determining if the jury could still be fair and impartial; and (4) the indictment was issued by a grand jury chosen through a discriminatory grand jury selection process.   The Trial Court denied the application on June 14, 2011 finding the claims to be repetitive and successive.[16]

The Louisiana Fourth Circuit denied Moran's related writ application on August 22, 2011, finding his post-conviction relief untimely under La. Code Crim. P. art. 930.8.[17]   The Louisiana Supreme Court also denied the subsequent writ application as seeking untimely relief citing La. Code Crim. P. art. 930.8 and *State ex rel. Glover v. State*, 660 So.2d 1189 (La. 1995).[18]

---

[14]St. Rec. Vol. 1 of 4, Minute Entry, 3/16/10.

[15]St. Rec. Vol. 1 of 4, Uniform Application for Post-Conviction Relief, date 3/24/10.

[16]St. Rec. Vol. 3 of 4, Minute Entry, 6/14/11; St. Rec. Vol. 1 of 4, Minute Entry, 6/16/11.

[17]St. Rec. Vol. 3 of 4, 4th Cir. Order, 2011-K-1012, 8/22/11; 4th Cir. Writ Application, 2011-K-1012, 7/25/11.

[18]*State ex rel. Moran v. State*, 90 So.3d 403 (La. 2012); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2011-KH-2195, 5/25/12; La. S. Ct. Writ Application, 11-KH-2195, 10/10/11 (postal meter 10/6/11).

II.     **Federal Habeas Petition**

On June 20, 2013, the clerk of this Court filed Moran's petition for federal habeas corpus relief in which he raised the following grounds for relief:[19] (1) his conviction was obtained in violation of double jeopardy where the jurors were discharged and brought back to try the case without being sworn; (2) the indictment was issued by a grand jury chosen through a discriminatory grand jury selection process; (3) he was denied effective assistance of counsel where counsel failed to investigate, failed to object or move to quash when the jury was recalled, failed to object to the Trial Court's reversal of the mistrial; (4) he was not advised at sentencing of the delays for filing for post-conviction relief; (5) the trial judges disparaging remarks and intemperate criticism of the defense denied him a fair trial; and (6) the trial judge denied him due process and a fair trial when he continued the trial after granting a mistrial without swearing the jurors or determining whether they could still be fair and impartial.

The State filed a response in opposition arguing that Moran's petition was not timely filed.[20] Moran replied to the State's opposition conceding that he waited over three years after his conviction to file for post-conviction relief in the state courts.  He claimed, however, that his delay should be excused under the holding in *Martinez v. Ryan*, __ U.S. __, 132 S. Ct. 1309 (2012).  He further complains that he only received a one word denial of his claims from the state courts.

---

[19]Rec. Doc. No. 3.

[20]Rec. Doc. No. 11.

## III.   General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[21] applies to this petition, which is deemed filed in this court under the federal mailbox rule on May 20, 2013.[22]   The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

In this case, the State contends that Moran's petition was not timely filed in this Court and he is not entitled to equitable tolling.  The record supports this conclusion for the following reasons.

## IV.   Statute of Limitations

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[23] *Duncan v. Walker*, 533 U.S. 167, 176-80 (2001).  As calculated above,

---

[21]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505, n.11 (5th Cir. 1992).

[22]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of Court filed Moran's federal habeas petition on June 20, 2013, when the filing fee was received after denial of pauper status.  Moran dated his signature on the petition on May 20, 2013.  This is the earliest date appearing in the record on which he could have delivered it to prison officials for mailing to a federal court.  The fact that he paid the filing fee at a later date does not alter the application of the federal mailbox rule to his pro se petition.  *See Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if filing fee was not paid at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

[23]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--
A.        the date on which the judgment became final by the conclusion of direct review or the

Moran's conviction was final on December 14, 2001, thirty days after his conviction was affirmed by the Louisiana Fourth Circuit.  Under § 2244, Moran had one year, or until Monday, December 16, 2002,[24] to file a timely federal application for habeas corpus relief which he did not do.  Thus, literal application of the statute would bar Moran's § 2254 petition as of that date unless he is entitled to tolling as provided for under the AEDPA.

### A.    **Statutory Tolling**

Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation.  *See* 28 U.S.C. § 2244(d)(2).  In order for a state post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing.  *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Williams v. Cain*, 217 F.3d 303, 306-08 & n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 468-69 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999) (Table).  For purposes of the AEDPA, a timeliness calculation in Louisiana requires

---

        expiration of the time for seeking such review;

B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

D.    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.  28 U.S.C. § 2244(d).

[24]The last day of the period was Saturday, December 14, 2002, leaving the end date to fall on the next business day, Monday, December 16, 2001.  *See* Fed. R. Civ. P. 6(a)(1) (weekends and holidays not included in calculation when it would be the last day of the period); La. Code Crim. P. art. 13 (same).

the application of the prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006). The Court has applied this rule in presenting the procedural history recited above.

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.'") (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. 2001), *overruled on other grounds by Carey*, 536 U.S. 214 (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 687-88 (5th Cir. 2005).

In the instant case, the AEDPA filing period began to run on December 15, 2001, the day after Moran's conviction became final. The one-year filing period ran uninterrupted for 365 days, until Monday, December 16, 2002, when it expired. Moran had no properly filed state application for post-conviction or other collateral review pending during that time. Moran actually concedes this point in his response.

Moran did not submit his first post-conviction application to the state trial court until May 19, 2004. This was over seventeen (17) months after the AEDPA filing period expired. A filing made after the AEDPA filing period has expired does <u>not</u> afford him any tolling. *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000). For these reasons, Moran's federal petition submitted for filing on May 20, 2013, was not timely under the AEDPA.

**B.     No Basis for Equitable Tolling**

The post-AEDPA jurisprudence also provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus. *Pace*, 544 U.S. at 418; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. *Pace*, 544 U.S. at 418-19; *see Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002).

Equitable tolling has only been extended under extraordinary circumstances outside the control of the petitioner. *See Holland v. Florida*, 560 U.S. 631, 652-53 (2010) (equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to timely file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); *United*

*States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) ("A garden variety claim of excusable neglect does not support equitable tolling.") (quotation omitted); *Fisher*, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended the deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

Moran has not presented, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling under the § 2244(d) computation. Moran has offered absolutely no reason for his excessive delay in bringing his federal claims to this Court. Under a broad reading, Moran points to *Martinez* as a basis for this Court to consider his ineffective assistance of trial counsel claims. His reliance on *Martinez* is misplaced.

In *Martinez*, the United States Supreme Court discussed the long-standing holding in *Coleman*, 501 U.S. at 752, that state prisoners have no constitutional right to counsel on post-conviction review and that deficient performance by post-conviction counsel does not excuse a procedural default. The Supreme Court carved out an exception to that rule in situations where a state defendant is barred from raising an ineffective assistance of trial counsel claim at the initial level of review for raising such a claim. *Martinez*, 132 S. Ct. at 1320. The Supreme Court was careful to note that its ruling was limited to situations where state law prohibited a defendant from raising an ineffective assistance of trial counsel claim in a proceeding in which he was not entitled

to counsel. *Id*., at 1319-20. Thus, the *Martinez* rule applies <u>only</u> to claims of ineffective assistance of counsel at trial that were procedurally defaulted and when there was a lack of, or ineffective assistance by, counsel during that initial collateral review proceeding. *Id*., at 1320; *see also*, *Trevino v. Thaler*, __ U.S. __, 133 S. Ct. 1911, 1921 (2013).

The *Martinez* decision created a limited exception to the procedural default doctrine and its impact on the ability of a federal court to consider a habeas petitioner's ineffective assistance of trial counsel claim that was not addressed by the state courts on the merits. This is <u>not</u> the issue presently before this Court which is Moran's untimely filing of his federal petition.

The *Martinez* decision did not in anyway address the subject of the AEDPA's statute of limitation or the doctrine of equitable tolling. That decision is inapplicable here and does not excuse Moran's failure to seek federal habeas review in a timely manner. *See*, *Manning v. Epps*, 688 F.3d 177, 189 (5th Cir. 2012) (nothing in *Martinez* excuses a petitioner's failure to file his petition before the AEDPA's one-year statute of limitations ran); *Oxley v. Cain*, No. 11-669, 2013 WL 5238297, at *2 (M.D. La. Sep. 17, 2013) (same); and *see Falls v. Cain*, No. 13-5091, 2014 WL 2702380, at *3 (E.D. La. Jun. 13, 2014) (Order adopting Report); *Reynolds v. Stephens*, No. 13-2728, 2014 WL 2575752, at *3 (N.D. Tex. Jun. 9, 2014) (Order adopting Report); *Anacleto v. Stephens*, No. 14-394, 2014 WL 2565673, at *2 (W.D. Tex. Jun. 6, 2014) (Order adopting Report).

The record does not contain any of the extraordinary circumstances previously recognized by the precedent cited above that would warrant equitable tolling. The record instead reflects that Moran made no diligent effort to pursue his federal habeas review in a timely manner. There simply is no basis for equitable tolling in this record.

Moran's federal petition is deemed filed in this Court on May 20, 2013, which was almost ten and one-half <u>years</u> after the AEDPA filing period expired on December 17, 2002. Moran's petition should be dismissed as time-barred.

## V.   <u>Recommendation</u>

For the foregoing reasons, it is **RECOMMENDED** that Ronnie R. Moran's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[25]

New Orleans, Louisiana, this 25th day of June, 2014.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[25]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.